1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7   DINESHA KANE,

8                           Plaintiff,          CASE NO. C15-0843-MJP-MAT

9         v.

10  CAROLYN W. COLVIN, Acting              REPORT AND RECOMMENDATION
    Commissioner of Social Security,       RE: SOCIAL SECURITY DISABILITY
11                                          APPEAL

                            Defendant.
12

13        Plaintiff Dinesha Kane proceeds through counsel in her appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15  denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

16  Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative

17  record (AR), and all memoranda of record, the Court recommends this matter be REMANDED

18  for further administrative proceedings.

19                      **FACTS AND PROCEDURAL HISTORY**

20        Plaintiff was born on XXXX, 1986.[1]   She completed high school and two years of

21  college, and previously worked as a transcribing machine operator, executive assistant/

22  _____

23        [1] Plaintiff's date of birth is redacted back to the year of birth pursuant to Federal Rule of Civil
    Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 1

administrative assistant, medical assistant, gambling cashier, and fast food worker. (AR 31, 42.)

Plaintiff filed an application for DIB in May 2012, alleging disability beginning January 25, 2012. (AR 142-43.) Her application was denied at the initial level and on reconsideration.

On June 24, 2013, ALJ M.J. Adams held a hearing, taking testimony from plaintiff and a vocational expert. (AR 38-62.) On July 26, 2013, the ALJ issued a decision finding plaintiff not disabled from the alleged onset date through the date of the decision. (AR 23-33.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on March 24, 2015 (AR 8-12), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's anxiety disorder/post-traumatic stress disorder and bipolar disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to

REPORT AND RECOMMENDATION
PAGE - 2

perform a full range of work at all exertional levels and with the mental capability to adequately perform activities generally required by competitive remunerative work as follows:  she can understand, remember, and carry out simple and detailed instructions required of jobs classified with a specific vocational preparation (SVP) rating of one or two, or unskilled work, as well as some jobs at SVP levels three or four, or semi-skilled work; she can make judgments on simple and detailed or complex work-related decisions required of jobs up to the semi-skilled level and she can respond appropriately to supervision, but should not be required to work in close coordination with co-workers, such as in a fast food restaurant kitchen; and she can deal with occasional changes in a work environment that requires only occasional exposure to or interaction with the general public.  With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a janitor, packager, or production assistant.

The Court's review of an ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954

REPORT AND RECOMMENDATION
PAGE - 3

(9th Cir. 2002).

The parties here agree this matter should be remanded, but disagree as to the nature of the remand. Plaintiff argues in favor of a remand for an award of benefits, while the Commissioner maintains the need for further administrative proceedings.

Remand

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 798 F.3d 749, 757 (9th Cir. 2015), *as amended in* 2015 U.S. App. LEXIS 19180 (9th Cir. Ariz. Nov. 3, 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id*. (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. at 758 (quoting Garrison, 759 F.3d at 1021).[2] *See also Treichler*, 775 F.3d 1101 ("Third, if we conclude that no outstanding issues

---

[2] The Court considers the existence of outstanding issues *before* considering whether to credit a claimant's testimony or a medical opinion as a matter of law. *Brown-Hunter*, 798 F.3d at 757; *Treichler*,

REPORT AND RECOMMENDATION
PAGE - 4

remain and further proceedings would not be useful, we . . . [find] the relevant testimony credible as a matter of law, and then determine whether the record, taken as a whole, leaves "'not the slightest uncertainty as to the outcome of [the] proceeding[.]'") (citations omitted).

Finally, even with satisfaction of the three requirements, the Court retains "'flexibility'" in determining the proper remedy. *Brown-Hunter*, 798 F.3d at 758 (quoting *Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* As recently stated by the Ninth Circuit:

> The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Id.* at 757 (quoted sources omitted). *Accord Strauss v. Comm'r of the SSA*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

The Court here, for the reasons set forth below, agrees with the Commissioner that this case should be remanded for further administrative proceedings.

A.   <u>Medical Opinions</u>

The record in this case includes opinions from three medical sources, treating psychiatrist Dr. Barry Grosskopf, treating therapist Rosemary Hill, and consultative examiner Dr. Erum

---

775 F.3d at 1105. *But see Garrison*, 759 F.3d at 1020 n.26, 1021 (stating, prior to *Brown-Hunter* and *Treichler*, that the "credited as true" factor incorporates the question of whether any outstanding issues must be resolved).

REPORT AND RECOMMENDATION
PAGE - 5

Khaleeq.  (AR 30, 548, 611-15, 788-89.)  Dr. Grosskopf opined:  "[Plaintiff] is not stable and is unable to work.  I recommend that she receive go on [stet] disability for a year and then be reevaluated."  (AR 788.)  Hill opined plaintiff would be unable to work due to her chronic physical problems, the need to care for her husband and children, all of whom have health concerns, and her lack of resources, that she could not sit or stand for more than twenty minutes at a time, and that she had compromised concentration due to her PTSD and "constant stress."  (AR 789.)

Notably, Dr. Khaleeq is the only "acceptable medical source" who provided opinions on plaintiff's specific functional abilities.  *See* 20 C.F.R. § 404.1513(a), (d) (Social Security regulations distinguish between "acceptable medical sources," such as licensed physicians and psychologists, and "other sources," such as nurses and therapists); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (while an ALJ must provide at least specific and legitimate reasons for rejecting the opinions of acceptable medical sources, the opinions of other sources are entitled to less deference and may be rejected with the provision of reasons germane to that source); and 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")  Dr. Khaleeq found plaintiff able to perform simple and repetitive tasks and detailed and complex tasks.  (AR 614 (pointing to plaintiff's "quite prompt" answering of questions in a mini mental status examination (MMSE)).)  Plaintiff "may have trouble interacting with coworkers and the public and accepting instructions from supervisors because she was written up at her previous job and said depending upon what kind of mood she is in, she may or may not interact with others or may or may not complete her work."

REPORT AND RECOMMENDATION
PAGE - 6

1   (*Id.*)   She also "may have difficulty performing work activities on a consistent basis.

2   Nonetheless, she was able to do fairly well on her MMSE today."   (*Id.*)   Plaintiff could maintain

3   attendance, "however, may take some time to complete a normal workday/workweek as she may

4   get interrupted from her different phases of bipolar disorder[,]" and usual workplace stress "may

5   aggravate" her condition.   (*Id.*)

6       The RFC assessed by the ALJ is consistent with Dr. Khaleeq's opinion that plaintiff

7   could perform simple and repetitive and detailed and complex tasks.   (AR 27.)   The RFC also

8   accounts for Dr. Khaleeq's opinion as to possible limitations in plaintiff's ability to interact with

9   coworkers and the public.   (*Id.*)

10       Plaintiff argues the ALJ erred in failing to include any limitation relating to supervisor

11   contact despite affording significant weight to that portion of Dr. Khaleeq's opinions, and in

12   assigning little weight to the opinions on performing tasks consistently and as to interruptions

13   due to mental impairments.   (*See* AR 30.)   She points to testimony of the vocational expert (VE)

14   (*see* AR 61-62) as supporting a disability finding and an award of benefits when considered in

15   relation to Dr. Khaleeq's opinions and the ALJ's errors.   The Court, however, concludes further

16   proceedings would be useful in relation to the evidence from Dr. Khaleeq.[3]

17   _____

18   [3] The ALJ found Dr. Grosskopf's opinion inconsistent with the longitudinal record, including
    plaintiff's "consistent presentation at appointments as well-oriented and with normal speech and thought

19   processes/content[,]" and inconsistent with plaintiff's reported ability to care for her children and
    husband, drive a car, and pay her own bills.   (AR 30.)   He found Hill's opinion as to physical limitations

20   beyond the scope of her expertise, her opinion as to concentration inconsistent with her own treatment
    notes, and that, while the identified "stresses may be true, they are not caused by or related to the
    claimant's mental impairments."   (*Id.*)   The Court finds no need to specifically address the ALJ's

21   consideration of these opinions given that the evidence from Dr. Khaleeq, standing alone, warrants further
    consideration of plaintiff's claim.   However, it should be noted that, contrary to plaintiff's suggestion (*see*

22   Dkt. 14 at 8), Dr. Grosskopf did not assess any specific functional limitations.   (*See* AR 788.)   *See also* 20
    C.F.R. §  404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work'
    does not mean that we will determine that you are disabled."); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th

23   Cir. 2010) ("The law reserves the disability determination to the Commissioner. Rejection of the treating

REPORT AND RECOMMENDATION
PAGE - 7

While affording significant weight to the "portion" of Dr. Khaleeq's opinions addressing both the types of tasks plaintiff can perform and her ability to interact with others, the reasoning the ALJ provided in support referred only to evidence associated with task performance.  (AR 30 (finding consistency with Dr. Khaleeq's evaluation of plaintiff, "including the findings of the mental status examination, on which the claimant was able to recall two out of three objects after a five minute delay, she was able to do serial three subtractions with only one error, and she was able to interpret proverbs and do simple mathematical calculations."))  In any event, assuming the ALJ's acceptance of Dr. Khaleeq's opinion on supervisor interaction, consideration of that opinion and the testimony of the VE does not support a finding of disability.

Dr. Khaleeq opined that plaintiff "may" have difficulties in accepting instructions from supervisors.  (AR 614.)[4]  Counsel for plaintiff asked the VE:  "And if that claimant was unable to get along with supervisors when they give her instructions if she's in a certain mood, would she be able to sustain work, if she caused conflict or disruption in the workplace?"  (AR 61.)  The VE responded:  "[I] think if that was occurring on a regular, daily basis, it probably would . . . be unacceptable to an employer and probably would result in their being subject to termination at some point."  (*Id.*)

physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation.") (quoted and cited sources omitted).

[4] Dr. Khaleeq also pointed solely to plaintiff's self-report in finding possible limitations in interactions with others.  (AR 614 (plaintiff may have trouble "because she was written up at her previous job and said depending upon what kind of mood she is in, she may or may not interact with others or may or may not complete her work."))  As suggested by the Commissioner, both the basis for the opinion and its speculative nature could have served as legally sufficient reasons to reject a limitation on supervisor interaction.  *See, e.g., Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1165 (9th Cir. 2008) (an ALJ may reasonably decline to adopt the opinion of a physician "offered as a recommendation, not an imperative."); *accord Rounds v. Comm'r, SSA*, 795 F.3d 1177, 1185-86 (9th Cir. 2015); and *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

REPORT AND RECOMMENDATION
PAGE - 8

Dr. Khaleeq did not opine plaintiff would be unable to get along with supervisors, let alone that that limitation would occur on a regular, daily basis.  Dr. Khaleeq stated plaintiff "may" have trouble accepting instructions from supervisors, without providing any insight into whether or how often that trouble might occur.  Dr. Khaleeq's opinion as to the extent of a limitation in plaintiff's ability to interact with supervisors remains unclear, and the record does not contain VE testimony accounting for the opinion as rendered by Dr. Khaleeq.

Nor do any other aspects of Dr. Khaleeq's report and/or the VE's testimony support an award of benefits.  Indeed, all of Dr. Khaleeq's remaining opinions were no more than tentative (AR 614 ("may" have difficulty performing work activities consistently, "may" take some time to complete a normal workday/workweek, and usual work stress "may" aggravate condition)), and none were addressed in the VE's testimony that plaintiff would be unable to sustain employment if she were "off task 20 percent or more of the day due to her moods" (AR 61). (*See also* AR 614 (Dr. Khaleeq also noted plaintiff was nonetheless able to do fairly well on the MMSE and opined she could maintain attendance).)

Plaintiff points to the prognosis provided in Dr. Khaleeq's report as accounting for the "seemingly 'speculative' nature" of the opinions.  (Dkt. 14 at 4.)  Dr. Khaleeq stated plaintiff's "prognosis remains guarded as bipolar disorder is a remitting/relapsing phenomena[,]" that she "also suffers from PTSD interfering with her daily functioning when she gets paranoid[,]" and that the "likelihood of recovery in the next 12 months is limited."  (AR 614.)  Yet, while perhaps a rational explanation, the ALJ properly interprets the evidence, not this Court.  *See Treichler*, 775 F.3d at 1098, 1105 (the ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record; a matter is properly remanded for further proceedings where the record is "uncertain and ambiguous").  *Cf. Morgan v. Commissioner of the SSA*, 169

REPORT AND RECOMMENDATION
PAGE - 9

1   F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational

2   interpretation, it is the ALJ's conclusion that must be upheld.")

3         The Court, in sum, finds an outstanding issue associated with the possibility of a

4   limitation in plaintiff's ability to accept instructions from supervisors and any implication to the

5   ALJ's step five conclusion.  The Court further concludes that, considering the report from Dr.

6   Khaleeq and the limited number and nature of the other medical opinions of record, serious

7   doubt as to plaintiff's entitlement to disability benefits remains and necessitates a remand for

8   further administrative proceedings.

9   B.     <u>Other Issues and Scope of Remand</u>

10        Plaintiff avers numerous other errors in the ALJ's decision, including in the step two

11  conclusion that her fibromyalgia is not a severe impairment, the credibility finding, the RFC

12  resulting from the improper evaluation of the medical evidence, and the rejection of lay

13  testimony.  (*See* Dkt. 9.)  The Commissioner points to other outstanding evidentiary conflicts

14  beyond the medical opinions, including in relation to plaintiff's physical abilities, the

15  significance of situational stressors, and whether or not there is evidence of fibromyalgia

16  symptomology satisfying the disability durational requirement.  (*See* Dkt. 13.)

17        When evaluating whether further proceedings would be helpful, the Court examines

18  "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual

19  issues have been resolved, and whether the claimant's entitlement to benefits is clear under the

20  applicable legal rules."  *Treichler*, 775 F.3d at 1103-04.  As discussed above, further

21  administrative proceedings would be useful to allow consideration of the medical opinions of

22  record, and it cannot be said on the present record that plaintiff should be found entitled to

23  disability benefits.  The Court further concludes that it would be useful for the ALJ to also

REPORT AND RECOMMENDATION
PAGE - 10

consider all of the other issues identified by the parties in this proceeding.

## CONCLUSION

This matter should be REMANDED to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g), including a new hearing, further development of the record, and a new decision.  On remand, the ALJ should reevaluate:  (1) the evidence associated with plaintiff's fibromyalgia; (2) plaintiff's credibility; (3) the medical evidence of record; (4) the lay testimony; (5) plaintiff's RFC; and (6) steps four and five, with the assistance of a VE as may be needed.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on __**January 4, 2016**__.

DATED this __14th__ day of December, 2015.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11